UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELIZABETH BROKAMP, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DISTRICT OF COLUMBIA, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 20-3574 (TJK) |

## DECLARATION OF ELIZABETH BROKAMP IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746(2), I, Elizabeth Brokamp, declare the following:

1. I am a citizen of the United States and a resident of the Commonwealth of Virginia. I am over eighteen years of age and fully competent to make this declaration. I knowingly and voluntarily submit this declaration in support of Plaintiff's Motion for Summary Judgment based on my personal knowledge of the following facts and would competently testify to them under oath if called upon to do so.

2. I have over twenty years' experience as a professional counselor.

3. I have a Master's Degree in counseling from Columbia University, and a PhD from the University of the Cumberlands.

1

4. As a professional counselor, I talk to my clients about their feelings, their relationships, and their lives. I also advise my clients on a variety of topics, including anxiety, relationships, and mindfulness.

5. My counseling consists entirely of conversations between me and my clients. Through those conversations, I seek to improve my clients' well-being.

6. I do not prescribe medication or conduct any medical procedures as part of my counseling. The only thing I want to do in the District is talk to clients over the internet.

7. I am licensed as a professional counselor in Virginia. I first became licensed as a professional counselor in Virginia in 2004 after obtaining my Master's degree.

8. From March 2010 through December 2017, I provided counseling services from an office located in Alexandria, Virginia, under the business name Alexandria's Women Counseling.

9. In 2018, I closed my Alexandria office in order to pursue a doctoral degree at the University of the Cumberlands. As part of my doctoral studies, I provided intake assessment and individual counseling for college students at the University of Mary Washington. In addition, starting in 2019, I have served as a supervisor for individuals who have completed their Masters' degrees and are seeking licensure.

10. In February 2020, I signed a lease on an office in Burke, Virginia, where I intended to offer counseling in-person under the business name Nova Terra Therapy. Because of the COVID-19 pandemic, however, I gave up the lease on the Burke office and instead opened Nova Terra Therapy as an online practice.

11. I currently provide counseling exclusively through the internet.

12. While I initially moved my counseling services online because of the pandemic, I subsequently found that teletherapy provides significant benefits for clients, as it allows clients to seek out help without having to make a trip to a counselor's office. That flexibility is particularly beneficial for new mothers, a group who I serve in my practice, as the demands of a newborn child can make it particularly difficult to schedule in-person counseling. I also believe teletherapy is helpful for clients who want to be seen imminently rather than wait for an in-person appointment.

13. I advertise my teletherapy services online, including through websites that provide counseling referral services. Clients seek me out for a variety of reasons, including need for services from a counselor with my particular areas of specialization and referrals from existing clients who have been satisfied with my services.

14. I intend to continue providing online teletherapy for the indefinite future.

15. My teletherapy conversations are no different from my in-person counseling conversations. My teletherapy conversations with my clients are just that: conversations, consisting of nothing other than speech.

16. Once I began seeing patients online, I began to receive inquiries from potential clients outside of Virginia, including residents of the District. Since 2020, I have been contacted by several D.C. residents seeking to engage my counseling services virtually.

17. I also had clients who I started seeing in Virginia, but who moved across state lines, and who wanted to continue to talk to me using teletherapy even after their move.

18. Because I am not licensed in the District, I have had to turn away District residents who came to me seeking help. As a counselor, when I see a need for my services I want to provide assistance. It is difficult for me to turn away people in need because of a licensing law.

3

19. Because of the burdens posed by licensing laws, I have also had to terminate relationships with existing clients who have moved away from Virginia. That can be damaging for clients. It takes time to find a new counselor in a new state and to build up the same relationship of trust and comfort.

20. For me to become licensed in every state where I might practice would be a significant burden, and, in fact, is too significant a burden for me to shoulder.

21. In large part, it would simply be too complicated and time-consuming for me to become licensed in every state where I might practice. Every state has different requirements to become licensed, including different paperwork requirements, different coursework requirements, and different supervision requirements. To read the application instructions, complete the paperwork, and submit the application in even a single state is a time-consuming process. To do that in multiple states would be prohibitively difficult.

22. For me to become licensed in every state where I might practice would also pose a significant financial burden. Most states impose hundreds of dollars in license fees, which must be paid every year. For me to be licensed in every state where I might practice—including states where current clients might move, might visit for work or vacation, and states where I might take on new clients—would cost thousands of dollars a year.

23. During the pandemic, I looked at the licensing requirements in the District and concluded that it would be too burdensome for me to become licensed in the District. When I looked at the requirements again more recently, that was still the case.

24. The District has an online checklist of paperwork that is required to become licensed by endorsement. That checklist includes an application, an examination score report, a postgraduate supervised experience form, a supervision calculation form, an

4

internship/practicum form, a coursework completion form, a "2x2" sized passport photo, a copy of my identification, fingerprints, proof of vaccination, and a $230 application fee.

25. I am not even sure that it would be possible for me to submit all of the required paperwork in the District. In particular, D.C. requires a "Coursework Completion Form" that requires detailed information on ten separate categories of required courses that must be completed in order to qualify for licensure. For each, the form requires the "Course Title" and the "Course ID." Because I completed my professional counseling Master's degree over twenty years ago, when counseling curriculum were less standardized, it is not a simple task for me to determine which of my courses matches up with each of the ten categories on the form. I no longer have the information I would need to complete this form, and, when I contacted Columbia University, they also were not able to provide me with this information.

26. Even if it were possible for me to become licensed in the District, for me to go through the license process would be a significant investment of time and energy. I would have to spend significant amounts of time to try to figure out how to complete the Coursework Completion Form and, even if I could eventually find some way to work with my school and the board to complete that form, I would still have to submit all the other paperwork.

27. It simply is not practical for me to go through the process to become licensed in the District, and I have no intention of applying to become licensed in the District.

28. If it was legal for me to practice in the District, I would use teletherapy to talk to D.C. residents in D.C., while I myself was located at my home in Virginia.

29. If it was legal for me to practice in the District, I would advertise my counseling services in the District through online counselor-referral services.

5

30. I filed this lawsuit challenging the District's licensing requirements because those requirements have prevented me from seeing clients in the District, and because I have had to turn away District residents who I could otherwise have helped.

31. In addition to suing the District, I filed a similar lawsuit in New York. I sued New York because I have had clients who moved to New York and, because I am not licensed in New York, I had to stop talking to those clients.

32. I have not sued Virginia because I have never had any reason to challenge Virginia's licensing restriction. I am licensed in Virginia, and, as a result, I have never had to turn away any clients because of Virginia's licensing requirements.

33. To the extent that Virginia applies its licensing law to exclude out-of-state counselors, I believe that is unconstitutional. I think Virginia should allow out-of-state counselors to practice in the state without having to obtain a Virginia license. However, because I have a Virginia license, I cannot bring that claim in Virginia.

34. In my opinion, states (including Virginia) should regulate the practice of professional counseling through what I understand are called "title acts." Under a title act, only licensed persons are allowed to use the title "licensed professional counselors," but a person who is not licensed can still practice so long as they do not falsely claim to be licensed.

35. Consistent with that view, I list my Virginia license on my website because it signifies that I have completed the requirements to use the title "licensed professional counselor" in the State of Virginia. In fact, since I am already licensed in Virginia, from my perspective Virginia's license law applies to me in the exact same way that it would apply if it were a title act. I would continue to list my Virginia license on my website if Virginia changed its law so that it operated as a title act, rather than a practice act.

36. I also list my Virginia license on my website because it lets people know where I am allowed to legally practice.

37. I am currently still working as a professional counselor. The number of clients that I serve varies week-to-week, but, in a typical week, I currently provide teletherapy services to between ten and twenty clients.

38. I intend to continue working as a professional counselor for the foreseeable future, and I have no plans to stop working as a professional counselor.

39. Currently, I am soliciting clients through an online portal called ModernHealth. I prefer ModernHealth at this time because I have found that the clients who come to me through the portal are a good fit for my practice.

40. If I could legally practice in the District, I would inform ModernHealth that they can refer clients to me who are located in the District.

41. Because I am currently primarily focused on soliciting clients through ModernHealth, I have changed my status on some other online referral services to indicate that I am no longer soliciting clients through those services. However, in the future, as current clients cycle out and I have room for new clients, I will resume soliciting clients through online referral services in addition to ModernHealth.

42. If I could legally practice in the District, I would inform online referral services other than ModernHealth that they can refer District residents to me as potential clients.

43. In addition to soliciting clients through ModernHealth, I also continue to receive inquiries from people who have been referred to me through more informal referral networks, including referrals from former clients. In the last month, I have received three or four inquiries from such people, including people who are located outside of Virginia.

44. If I could legally practice in the District, I would accept informal referrals of clients located in the District.

45. Unless the District's law is enjoined, I will continue to have to turn away District residents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24 day of June, 2023.

By: _____
Elizabeth Brokamp