UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELIZABETH BROKAMP,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | No. 1:20-cv-03574-TJK |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF**

Dr. Elizabeth Brokamp makes three points in her supplemental brief: (1) recent amendments to the licensure-by-endorsement requirements do not materially change the requirements, which she still personally finds burdensome; (2) the Counseling Compact is not yet operational, but in any event contradicts the justifications for licensure; and (3) she has an (unalleged) claim for nominal damages that will save her case from mootness. Pl.'s Supp. Br. [51]. Defendant District of Columbia (District) addresses each in turn, but in short, none makes her claims more meritorious or the reasons for a stay less strong.

I. **The Revised Criteria for Licensure-by-Endorsement Are Not Unconstitutionally Burdensome.**

Dr. Brokamp acknowledges, as she must, that recent statutory amendments "revis[ed] the criteria for licensure by endorsement," Pl.'s Supp. Br. at 1, but instead of explaining how the new statutory criteria burden her, she spends much of her brief arguing that a checklist on the Board of Professional Counseling's website sets the required criteria and burdens her, *id.* at 2–4. But Dr. Brokamp mischaracterizes the checklist; it functions instead as a guideline. Had Dr. Brokamp tried to apply, she would see that, in the application portal, an applicant does *not* need to supply all the documentation listed in the checklist in order to submit an application. Instead,

an applicant can submit the materials she has, and the Board will review each application individually to determine whether the statutory criteria, as now amended, have been met. And of course, if Dr. Brokamp had any questions about the application process or whether she could apply without certain documents, *see id.* at 4, she could have just called or emailed with those questions. She never has.

Indeed, the District has already explained that her complaints about the burdens of applying—which she repeats now—are not valid because, among other things, they contradict her prior testimony that she had never tried applying and are based on alleged facts created by Dr. Brokamp post-discovery, which she unfairly prevented the District from testing. Def.'s Combined Opp'n at Pl.'s Mot. for Summ. J. & Reply (Def.'s Opp'n) [38] at 27–28; *see also Galvin v. Eli Lilly & Co.*, No. 03-cv-1797, 2005 WL 3272142, at *2 (D.D.C. Sept. 12, 2005) ("Plaintiff cannot receive Defendant's motion for summary judgment and then go in search of new evidence with which to attack Defendant's arguments. This contradicts the very notion of a discovery process . . . ."), *aff'd*, 488 F.3d 1026 (D.C. Cir. 2007); *Stanazai v. Broad. Bd. of Governors*, No. 17-cv-2653, 2020 WL 6118183, at *5 n.3 (D.D.C. Oct. 16, 2020) (same); *Chambers v. District of Columbia*, No. 14-cv-2032, 2024 WL 3756315, at *4 (D.D.C. Aug. 12, 2024) (explaining that courts usually do not accept facts and evidence developed post-discovery), *appeal docketed*, No. 24-7132 (D.C. Cir. Sept. 13, 2024). Dr. Brokamp never responded to these points about her improper reliance on a sham affidavit or post-discovery allegations. *See* Pl.'s Reply [40] at 13–14. So she already conceded this issue of burdensomeness. *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014).

Parroting these complaints now makes them no more admissible or persuasive. She cites no precedent even suggesting that any of her complaints are a valid reason to strike down a

longstanding, innocuous licensing law.  To the contrary, the most on-point case—brought by Dr. Brokamp herself yet unmentioned in her brief—held that a licensing law with *more* requirements was not unconstitutionally burdensome.  *Brokamp v. James*, 66 F.4th 374, 384–85 & n.9, 402–03 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1095 (2024).  So the District stands by its previous responses to these complaints.  Def.'s Opp'n at 28; *see also Gerber Prods. Co. v. Perdue*, 254 F. Supp. 3d 74, 81 (D.D.C. 2017) ("Plaintiff's claimed confusion . . . is, in a sense, of its own making.  If a plaintiff can easily remedy such purported harm by seeking clarification from an agency, but has not done so, then the plaintiff cannot claim to suffer from an injury in fact . . . .").  But now, many of the complaints have lost whatever little force they had.  Dr. Brokamp has not tried applying under the new statute, and she relies solely on her prior (sham) affidavit.  So, it is hard for her to complain about an application she has not even tried filling out.  Indeed, she complains most strenuously about having to fill out a coursework completion form, Pl.'s Supp. Br. at 4, but as explained above, she would be able to submit an application without that form.

In any event, Dr. Brokamp's alleged personal struggles with a simple application are not material because they represent just one individual's complaints.  As she stated in sworn testimony, her "as-applied challenge focuses on the District's justification for the application of the law *generally* to individuals who are similarly situated to Plaintiff and, thus, does not require detailed inquiry into Plaintiff's individual practice."  Def.'s Ex. U [39-3] at 2 (emphasis in original); *see also* Def.'s Opp'n at 21–22 (explaining why intermediate and strict scrutiny do not require the government to show that the challenged law is tailored as to the specific plaintiff).  So even if the Court accepts Dr. Brokamp's fabricated complaints about *her* nonexistent application, that does not mean that the application requirements are "*generally*" burdensome.  Def.'s Ex. U

at 2. There is no evidence in the record that anyone else has struggled with the application in the way that Dr. Brokamp alleges that she has post-discovery or that anyone else has been deterred from applying because of the minimal requirements. And she likewise points to no precedent holding that a court should strike down a duly enacted licensing law based on one person's complaints that she could not figure out the application. Such arguments are a one-way ratchet because a plaintiff can always complain that he or she personally struggled with an application.

Finally, it is a red herring for Dr. Brokamp to argue that the District's requirements are burdensome because she must "navigate similar burdens imposed by every jurisdiction in which she desires to practice." Pl.'s Supp. Br. at 4. She has not identified any other state that she might want to practice in some day. Moreover, the question is whether *the District's* requirements burden her—not whether the District's requirements in conjunction with every hypothetical state in combination burden her. Such arguments by Dr. Brokamp are another one-way ratchet because a challenger to a licensing statute could always win by claiming that the burdens of one state's licensing scheme are too much in combination with any (or every) other state's requirements. These arguments did not move the Second Circuit, and they should not move this Court. *See Brokamp*, 66 F.4th at 402–03. Indeed, in the nearly five years that this case has been litigated, Dr. Brokamp has not been able to point to a single case recognizing a First Amendment right-to-reciprocity for licensing that underlies her arguments, particularly her burden arguments. Her most recent brief is no different.

II.     **Dr. Brokamp Misunderstands the Counseling Compact in Several Ways.**

Before addressing Dr. Brokamp's arguments about the Counseling Compact, it is important to note what she does *not* argue. Dr. Brokamp does not dispute that the Counseling Compact will moot her claims for prospective relief. *See* Pl.'s Supp. Br. at 4–5. That is notable because the District put her on notice that it would be raising mootness. Def.'s Resp. to Ct.'s

Mar. 4, 2025 Min. Order (Def.'s Resp.) [52] at 5 n.2.  And she addresses mootness in regards to nonexistent claims for retrospective relief, while conspicuously failing to address mootness in regards to her actual claims for prospective relief.  Pl.'s Supp. Br. at 6–7.

Instead, Dr. Brokamp makes much of the fact that the Compact is not currently operational and, according to her, is "just a concept."  *Id.* at 4–6.  The Compact is not a "concept," but rather, the law in the District.  Counseling Compact Approval Act, D.C. Law 25-238, 72 D.C. Reg. 311 (June 17, 2024).  True, the Compact is not operational yet, but that is why the District has moved for a stay—common-sense relief that Dr. Brokamp remarkably does not address, even though the District notified her of its motion well before her supplemental brief was due.  Moreover, the vast majority of states have entered into the Compact.  Counseling Compact, *Compact States*, https://tinyurl.com/ffvrtf46 (last visited Mar. 30, 2025).  There is a lot riding on the Compact; so it is not if the Compact is just never going to happen.

As to her speculation that the District will not be able to implement the Compact due to logistical and budgeting reasons, she has no knowledge of internal agency processes, and she misunderstands District budgeting.  *See* Pl.'s Supp. Br. at 5–6.  The fiscal impact statement simply observes that, when the Council was considering the legislation, the existing budgets had not allocated funds to implement the Compact.  That is unremarkable because the District had not yet entered the Compact.  Now that the legislation has passed, the Department of Health is actively addressing funding by exploring alternative funding avenues without compromising existing fiscal obligations.  At bottom, the Department remains committed to the successful implementation of the Compact and is actively working to find viable solutions.  The Department has recently implemented other interstate compacts, so the Department knows what it is doing.  *E.g.*, D.C. Bd. of Physical Therapy, *Letter Regarding Physical Therapy Compact*

(Nov. 3, 2023), https://tinyurl.com/ynredup9.  Thus, as the District represented, the District expects to allow LPCs to practice through the Compact by the end of the year.

Next, Dr. Brokamp says without explanation or citation that "the Compact has not changed the burdens of licensure."  Pl.'s Supp. Br. at 6.  But the Compact obviates the need for Dr. Brokamp to obtain a District license—and thus gives her the very relief she sought.  Def.'s Resp. at 5.  Indeed, Dr. Brokamp admits that the Compact will allow "a professional counselor who is licensed in one member state to practice in another member state."  Pl.'s Supp. Br. at 4.

By now belittling the Compact elsewhere in her brief, Dr. Brokamp contradicts herself.  Throughout discovery, she extensively questioned nearly all the District's witnesses about the Compact.  And she spent part of her summary judgment briefing arguing that the District could cure the alleged constitutional problems with its licensure scheme by improving license portability.  *E.g.*, Mem. of P. & A. in Supp. of Pl.'s Cross-Mot. for Summ. J. (Pl.'s Mot.) [34] at 31–32.  The District has now given Dr. Brokamp her preferred policy, so she moves the goalposts.

Lastly, Dr. Brokamp argues that the District's entry into the Compact shows that the District's justifications for a licensing law are invalid.  Pl.'s Supp. Br. at 6.[1]  She misunderstands the Compact.  As expert testimony unrebutted and ignored by Dr. Brokamp explained, the Compact is not inconsistent with the justifications behind licensure.  Def.'s Ex. G [29-9] at 8–9.  LPCs still need to meet licensure requirements in their home state.  *Id.*  To enter the Compact, a state must meet a certain level of licensure requirements.  *Id.*  And as the Second Circuit

---

[1]   Dr. Brokamp repeats the tired canard that by wishing to establish a professional counseling practice in the District all she wants to do is "speaking."  Pl.'s Supp. Br. at 6.  The District has already spent much ink and evidence showing that Dr. Brokamp's refrain is wrong.  *E.g.*, Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. (Def.'s Mot.) [29] at 18–24.

explained—in Dr. Brokamp's own case—there is nothing constitutionally wrong with requiring an already licensed LPC to show that she is in fact in good standing and has met comparable requirements to the District's. *Brokamp*, 66 F.4th at 402. Whether that check is done through the licensure-by-endorsement process or the Compact, it is not a constitutional violation. Even under heightened scrutiny, the state has room to choose between these two options. *See In re Sealed Case*, 77 F.4th 815, 830–31 (D.C. Cir. 2023) ("It bears emphasis that, under the strict-scrutiny standard, a restriction must be narrowly tailored, not perfectly tailored." (internal quotation marks and citation omitted)), *cert. denied sub nom. X Corp. v. United States*, 145 S. Ct. 159 (2024).[2]

### III.   Dr. Brokamp Has Not Made a Claim for Nominal Damages.

Dr. Brokamp argues that she has made a claim for nominal damages that will keep her case alive if the Compact moots her claims for prospective relief. Pl.'s Supp. Br. at 6. But there is no nominal damages claim to speak of. Dr. Brokamp has not pleaded any claim for nominal damages. Rather, her Complaint is unambiguously titled "COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF." Compl. [1] at 1. Her prayer seeks a declaratory judgment, a permanent injunction, and attorney's fees and costs. *Id.*, Prayer (A)–(C). Although she includes a boilerplate request for "[a]ny other legal or equitable relief," she does not further specify the type of relief that would be included. *Id.*, Prayer (D).

Nor does Dr. Brokamp point to any other time in this nearly five-year litigation that she has floated a request for nominal damages. Quite the opposite, the District previously explained that Dr. Brokamp failed to meet the standard for asserting standing to seek prospective relief.

---

[2]   If the Court nonetheless agrees with Dr. Brokamp that the Compact undermines the justifications for the current licensing law, then that is yet another reason to stay the case. A federal court should not strike down a law when it knows that a legislative fix is on its way.

7

Def.'s Mot. at 11 ("imminent and concrete (as opposed to hypothetical and speculative) injury" (internal quotation marks and citation omitted)). In responding, she did not dispute the applicable standard or argue that she nonetheless had standing to seek retrospective relief. Pl.'s Mot. at 16. Rather, she explained why, in her view, "The Court May Enjoin The Licensing Law." Pl.'s Reply [40] at 3. According to Dr. Brokamp herself, this case has always been about prospective relief.

A plaintiff cannot assert a nominal damages claim when it has not pleaded one or raised one within a reasonable time. *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998); *see also, e.g.*, *Hurd v. District of Columbia*, 707 F. Supp. 3d 1, 16 (D.D.C. 2023), *argued*, No. 23-7176 (D.C. Cir. Nov. 7, 2024); *Daskalea v. Wash. Humane Soc'y*, 710 F. Supp. 2d 32, 44 (D.D.C. 2010); *Matthews v. District of Columbia*, 675 F. Supp. 2d 180, 188 (D.D.C. 2009). A catch-all request for relief, without more, is not enough to preserve a nominal damages claim. *Hurd*, 707 F. Supp. 3d at 17 n.12; *see Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997) ("It should have been clear to the Court of Appeals that a claim for nominal damages, extracted late in the day from Yniguez's general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection.").[3] Pleading failures aside, Dr. Brokamp at least forfeited a nominal damages claim by failing to raise it when moving for *final judgment* and

---

[3] As the *Hurd* court explained, the D.C. Circuit has only once suggested that a plaintiff who did not plead a nominal damages claim could seek nominal damages, but that was dicta, and in any event, the case is distinguishable. 707 F. Supp. 3d at 17 n.12 (citing *Aref v. Lynch*, 833 F.3d 242 (D.C. Cir. 2016)). Nominal damages are sometimes available when a plaintiff seeks compensatory damages but cannot prove actual damages. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). The *Aref* plaintiffs pleaded a request for compensatory damages, so nominal damages could be available as a default. 833 F.3d at 261, 266. But Dr. Brokamp did not plead a request for compensatory damages. Further, *Aref* weighed heavily that the plaintiffs raised a request for nominal damages at their first opportunity in their opposition to defendants' motion to dismiss. *Id.* at 266. Dr. Brokamp raises nominal damages long after final briefing has ended.

arguing why she has standing.  *See* Pl.'s Mot. at 16; Pl.'s Reply at 3; *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("[O]rdinary rules of forfeiture apply to standing.").  And Dr. Brokamp cannot seek to amend her complaint through briefing.  *Van Der Werf v. Nat'l Park Serv.*, No. 24-cv-639, 2025 WL 579704, at *3 n.2 (D.D.C. Feb. 21, 2025) (Kelly, J.).  Accordingly, there is no nominal damages claim that can save Dr. Brokamp from mootness.  *Daskalea*, 710 F. Supp. 2d at 44.  Ignoring all this precedent, Dr. Brokamp cites only *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), but there, the plaintiffs explicitly made a request in their complaint for nominal damages, *id.* at 284.  Dr. Brokamp has not.

Moreover, allowing Dr. Brokamp to assert a nominal damages claim would be unfair and prejudicial.  Because Dr. Brokamp has always litigated this case as one seeking solely prospective relief, the District litigated this case that way too.  Had the District understood that a nominal damages claim was on the table, the District would have explored facts and arguments specifically addressed to claims for retrospective relief.  For example, Dr. Brokamp resisted giving the District any information about her practice.  Def.'s Ex. U at 2.  The District would have pushed back on that resistance if a retrospective relief claim were on the table because the District would have been interested in exploring whether she has in fact ever turned away District-based clients and suffered past harm.  In short, it would be unfair to take up a nominal damages claim and enter judgment on that claim when the District did not have the opportunity to mount a defense against it.

Even if the Court allows Dr. Brokamp to assert an eleventh-hour nominal damages claim, the reasons for staying the case still stand.  It is undisputed that the Compact will moot Dr. Brokamp's claims for prospective relief, and—as the title of her Complaint makes clear—those claims are the thrust of her case.  Accordingly, it still makes sense to stay the case for the

9

Compact to become operational. Otherwise, any pre-Compact judgment on the marquee prospective relief claims will be moot once the Compact is operational.

Date: March 21, 2025.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

/s/ Matthew R. Blecher
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

/s/ Honey Morton
HONEY MORTON [1019878]
Assistant Chief, Equity Section

/s/ Adam J. Tuetken
ADAM J. TUETKEN [242215]
RICHARD P. SOBIECKI [500163]
BRENDAN HEATH [1619960]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7474
Email: adam.tuetken@dc.gov

*Counsel for Defendant*