**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELIZABETH BROKAMP,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:20-cv-03574-TJK** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
NOTICE OF SUPPLEMENTAL AUTHORITY**

Dr. Elizabeth Brokamp takes a narrow decision addressing a law prescribing what viewpoints licensed therapists may espouse and misconstrues it to endorse her extreme claim that states cannot license therapists at all—even just to verify their qualifications before they extend their practice into another state.  Pl.'s Not. of Supp. Auth. (Pl.'s Not.) [66] (citing *Chiles v. Salazar*, 607 U.S. ----, No. 24-539, 2026 WL 872307 (U.S. Mar. 31, 2026)).[1]  In *Chiles*, the Supreme Court reviewed Colorado's "conversion therapy" law that prohibited licensed therapists from efforts to change a client's sexual orientation or gender identity.  2026 WL 872307, at *4. The petitioner (Chiles) claimed that her only actions covered by the law would be conversion therapy carried out through talk therapy.  *Id.*  The Court issued a "narrow" decision, *id.* at *6,

---

[1]    *See, e.g.*, Pl.'s Not. at 3 ("[E]ven minimal logistical burdens imposed by licensing requirements violate the First Amendment."); Oral Arg. at 2:10–3:00, *Brokamp v. James*, No. 21-3050 (2d Cir. Sept. 19, 2022) (in response to question why she has not challenged Virginia's licensing requirement, Dr. Brokamp: "We believe that if she challenged the Virginia licensing requirement, she would prevail there."); *id.* at 26:10–26:43 (in response to question of whether there was a licensing law in any state that would not chill her speech, Dr. Brokamp: "At present, Your Honor, no."); *id.* at 26:43–27:10 (in response to question of whether "the rule that you seek" would result in the elimination of all states' licensing laws for professional counselors, Dr. Brokamp: "If it's facial relief, that's likely . . . .").

concluding that the law was viewpoint-based, *id.* at *8–9. With a gay client, Chiles could express support for his sexual orientation, but she could not counsel him that he could change his orientation. *Id.*

*Chiles* does not support Dr. Brokamp at any step of the analysis. At the first step, whether the District's licensing law regulates speech as speech, *Chiles* did not address a requirement to obtain a license before practicing professional counseling and did not question states' authority to license professional counselors. In fact, the Court distinguished licensing laws from Colorado's conversion therapy ban, explaining that "licensing laws have traditionally addressed what qualifications an individual must possess before practicing a particular profession," while Colorado's law "dictate[d] a professional's point of view." *Id.* at *12. Likewise, Chiles took the position that "[l]icensing laws . . . generally regulate *who* can speak, not *what* they can say" and so are "conduct regulation[s] that incidentally affect[ ] speech," while "Colorado's law regulates not who speaks but *what* can be said." Reply Br. for Pet'r at 3, *Chiles v. Salazar*, No. 24-539 (U.S. Jan. 15, 2025). In convincing the Supreme Court to grant certiorari, Chiles emphasized that the question presented would not put licensing requirements at risk. *See id.* at 1, 3. As a result, *Chiles* does not overrule circuit precedent broadly holding that regulations on entry into a profession need only satisfy rational basis review—and Dr. Brokamp does not contend otherwise. *See Nat'l Ass'n for Advancement of Multijurisdictional Practice v. Howell* (*NAAMJP*), 851 F.3d 12, 19–20 (D.C. Cir. 2017); *Shume v. Pearson Educ. Inc.*, 306 F. Supp. 3d 117, 130 (D.D.C. 2018) (Kelly, J.) (applying *NAAMJP*'s rule); *Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (D.C. Cir. 1996) (the Court follows the case that is most "directly on point").

Moreover, the Supreme Court concluded that Colorado's law, as applied to Chiles, was not a conduct regulation that incidentally affects speech because "as far as she is concerned, speech is all Colorado seeks to regulate." 2026 WL 872307, at *10. In contrast, the District's licensing law does not regulate Dr. Brokamp's talk therapy alone but the expansion of her practice to District-based clients, as District law and the record conclusively show. The licensing requirement applies if an out-of-state licensed professional counselor (LPC) wants to take on clients located in the District. *See* D.C. Code § 3-1201.05(a) ("A health professional licensed . . . in the District . . . may provide a telehealth service to a District resident or person located in the District if doing so" meets several requirements). So a Board of Professional Counseling (Board) representative advised Dr. Brokamp that she needed to obtain a license after she explained that she wanted to "tak[e] [District-based] individuals on as new patients," "work with" them, provide her "professional counseling services" to them, and "practice in D.C." Def.'s Ex. M [29-15] at 2, 4. The District's regulatory jurisdiction over LPCs encompasses any professional services for District-based clients or aspects of their professional relationship, even if an LPC's conduct does not take place in the District. *See* D.C. Code § 3-1210.01(e) ("A person licensed . . . to practice a health occupation in the District of Columbia is subject to the disciplinary authority of the board although engaged in practice elsewhere.").[2] The upshot of all this is that the licensing law applies to Dr. Brokamp's provision of her professional services to District-based clients, which—it is beyond genuine dispute—includes more than just talking and includes professional responsibilities, like diagnosing, that were not at issue in *Chiles*. *See* Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. (Def.'s MSJ) [29] at 18–20. The licensing law is

---

[2]     To illustrate, if a Maryland-based LPC, licensed in the District by endorsement, engages in a sexual relationship with a District-based client, but the relationship was carried out in Maryland, the Board could still discipline the LPC or revoke her license.

triggered by her taking on District-based clients in a fiduciary relationship for remuneration. *Cf. Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459 (1978) ("A lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns."). Accordingly, "speech is [not] all [the District] seeks to regulate." *Chiles*, 2026 WL 872307, at *10.

Even if the licensing law were misunderstood to only apply to Dr. Brokamp's talk therapy, the District's law does not "seek[ ] to silence a viewpoint she wishes to express," which was the infirmity in the Colorado law. *Id.* at *11. As Dr. Brokamp admits, there is no viewpoint discrimination claim here. Pl.'s Not. at 2; *see* Compl. [1] ¶ 77 (alleging only content discrimination). Nonetheless, she argues that *Chiles* supports her claim of *content* discrimination because it "reaffirmed" that "laws regulating speech based on its subject matter or communicative content" are subject to strict scrutiny and "the standard" the Court applied in a minute order partially denying the District's motion to dismiss. Pl.'s Not. at 2.

*Chiles* does not support Dr. Brokamp's claim of content discrimination. In the words of Chiles herself, licensing requirements "are nothing like Colorado's counseling restriction: they establish objective competency requirements for *who* can practice; they don't dictate *what* licensed practitioners can say to clients." Reply Br. for Pet'r at 14, *Chiles v. Salazar*, No. 24-539 (U.S. Sept. 18, 2025). Thus, "[u]nauthorized-practice laws requiring counselors to be licensed are facially viewpoint- and content-neutral, and courts have widely upheld them against free-speech claims." *Id.* at 17. As support, Chiles cited Dr. Brokamp's own case, *Brokamp v. James*, 66 F.4th 374, 394 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1095 (2024), and *National Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F.3d 1043, 1055 (9th Cir. 2000), which both held that laws materially indistinguishable from the District's were content-

4

neutral.[3]  Rather than "put[ ] to rest the District's arguments," Pl.'s Mot. at 1, *Chiles* embraced them—and rejected Dr. Brokamp's by name.

Contrary to Dr. Brokamp's assertion, *Chiles* did not hold that Colorado's law was content-based because of its function.  Pl.'s Not. at 2.  The law was *viewpoint-based* because Chiles could only express acceptance of a client's sexual orientation or gender identity.  *See* 2026 WL 872307, at *9.  And the Court certainly did not overrule its rejection of Dr. Brokamp's preferred rule that "any classification that considers function or purpose [of speech] is *always* content based."  *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 74 (2022).

Dr. Brokamp's invocation of the minute order is unavailing.  That order was decided based only on the allegations, which misconstrued the licensing law and the facts, and before cases like *Brokamp* and *Austin*, which rejected her understanding of content discrimination.  The order reasoned that the District's licensing law was content-based because it allowed Dr. Brokamp to discuss certain topics with clients but not others.  But, as a full record makes clear, the licensing law applies *before* Dr. Brokamp takes on clients and regulates the kind of client relationships and consumer transactions she can enter into.  Def.'s MSJ at 19–20, 25.  And even within client sessions, it does not prescribe what topics she can discuss.  *Id.* at 27–28.  That distinguishes the law from a conversion therapy ban.  *See Brokamp*, 66 F.4th at 394.

---

[3]     The Supreme Court's certiorari decisions show that it views LPC licensing laws as distinct from conversion therapy bans.  First, the Court considered Dr. Brokamp's petition for certiorari, after her Second Circuit loss, around the same time as a petition in *Tingley v. Ferguson*, a challenge to a conversion therapy ban.  *Compare Brokamp v. James*, No. 23-463 (U.S.), *with Tingley v. Ferguson*, No. 22-942 (U.S.).  When the Court denied certiorari in *Tingley*, three Justices indicated that they would have granted review, 144 S. Ct. 33 (2023), but none of those Justices indicated the same in *Brokamp*.  Second, the day before the Court issued *Chiles*, the Court denied certiorari in *Upsolve, Inc. v. James*, which applied *Brokamp* to another licensing law.  155 F.4th 133, 143 (2d Cir. 2025), *cert. denied*, No. 25-948, 2026 WL 858427 (U.S. Mar. 30, 2026).  Third, when the *Chiles* Court listed the cases involved in the circuit split it was resolving, it did not include *Brokamp*.  2026 WL 872307, at *6.

Even if *Chiles* rendered the District's licensing law content-based (and it does not), *Chiles* would not end the analysis for several reasons. First, as the concurrence in *Chiles* flagged, content-based laws are not subject to strict scrutiny where "[the] risk" of a content-based law "driv[ing] certain ideas or viewpoints from the marketplace" is "attenuated." 2026 WL 872307, at *14 (Kagan, J. concurring) (quoting *Davenport v. Wash. Ed. Ass'n*, 551 U.S. 177, 188 (2007) (Scalia, J.)). There is neither any record evidence nor any credible argument that the District's licensing law risks driving certain ideas or viewpoints from the marketplace. Second, *Chiles* did not apply heightened scrutiny, let alone to a licensing law, so it sheds no light on whether the District's law survives heightened scrutiny. And third, there was no facial challenge in *Chiles*, *see id.* at *4 (majority), so it provides no help to Dr. Brokamp's facial challenge.

Next, Dr. Brokamp argues that *Chiles* supports her remarkable claim that "even minimal logistical burdens imposed by licensing requirements violate the First Amendment." Pl.'s Not. at 3. No such rule can be found in *Chiles*, which did not invalidate "licensing requirements." Had *Chiles* announced this rule or suggested that states cannot license therapists (even if their requirements are "minimal"), it would have called into question all sorts of precedent. *See, e.g.*, *Barsky v. Bd. of Regents*, 347 U.S. 442, 449 (1954) (states enjoy "broad power" to license "all professions concerned with health"); *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (recognizing an evidentiary privilege for "confidential communications between a *licensed* psychotherapist and her patients" (emphasis added)). But "the [Supreme] Court does not overturn or limit its prior holdings through silence or implication." *Herron v. Fannie Mae*, 861 F.3d 160, 168 (D.C. Cir. 2017).

Nor can such a rule be found in *Watchtower Bible & Tract Society v. Village of Stratton*, 536 U.S. 150 (2002). *Contra* Pl.'s Not. at 3. *Watchtower* merely held that an "unprecedented"

6

ordinance requiring a permit before engaging in door-to-door political advocacy, at the sacrifice of pamphleteers' anonymity, was not tailored to government interests in preventing crime or fraud and protecting privacy. 536 U.S. at 164–68. As courts have explained, it was a narrow, fact-bound decision. *E.g.*, *Peterson v. Nat'l Telecomms. & Info. Admin.*, 478 F.3d 626, 633 (4th Cir. 2007); *Riel v. City of Bradford*, 485 F.3d 736, 754 (3d Cir. 2007). It did not herald the end of professional licensing as Dr. Brokamp suggests. Indeed, *Watchtower* was not cited anywhere in *Chiles*—or Dr. Brokamp's motion for summary judgment.[4]

Finally, Dr. Brokamp argues that *Chiles* "refutes the District's suggestion that counselor licensing is supported by a long tradition" because *Chiles* declined to recognize the speech of licensed counselors as a new category of speech warranting diminished First Amendment protection. Pl.'s Not. at 2. But, as explained, the District's *licensing* law regulates what kinds of client relationships Dr. Brokamp can enter into, not what topics she can discuss. Whether such laws are constitutional based on a historical analysis was not the question before the Court. Anyway, the District does not need to make a historical showing to defeat Dr. Brokamp's claims.

All said, *Chiles* involved a different law and a different claim. As the Supreme Court often reminds us, its "opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373–74 (2023). Thus, "general language in judicial opinions should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Olivier v. City of Brandon*, 146

---

[4] In more misuse of a notice of supplemental authority, Dr. Brokamp fires another missive at the Counseling Compact, even though she already conceded that it will moot her claims for prospective relief. *See* Pl.'s Not. at 3 n.2. The District addresses the Compact in its concurrently filed notice of withdrawal.

S. Ct. 916, 925 (2026) (quoting *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 278 (2023)).  Dr. Brokamp latches onto language about talk therapy in *Chiles* while failing to understand that *Chiles* was a "narrow" decision that did not consider the quite different circumstances of a licensure-by-endorsement law.  2026 WL 872307, at \*6.

Date: April 10, 2026

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Adam J. Tuetken*
ADAM J. TUETKEN [242215]
RICHARD P. SOBIECKI [500163]
BRENDAN HEATH [1619960]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 735-7474
Email: adam.tuetken@dc.gov

*Counsel for Defendant*

8